## GLOCESTER *v,* SMITHFIELD.

More than one person may be included in the same order for the removal
of persons, adjudged likely to become chargeable, to the place of their
last legal settlement.

Under our statute legitimate children though idiots, follow the settlement
of their father until they arrive to the age of twenty-one years, and after-
wards retain such settlement until they gain a settlement of their own

THIS was an appeal from an order of the Town Council
of the town of Smithfield, for the removal of Mary La-
tham and Deborah Latham from said Smithfield to the
town of Glocester. The order was made upon the com-
plaint of the Overseer of the Poor of Smithfield that said
Mary and Deborah were residing in Smithfield having
no legal settlement therein and were likely to become
chargeable upon the town, which complaint the Town
Council adjudged to be true, and that Glocester was the
place of the last settlement of said Mary and Deborah.

*Browne,* for the plaintiff, moved that the proceeding
should be quashed, because there were two persons joined
in the same order, whose settlements depended upon dif-
erent facts and different evidence and as to whom there
must or might be different judgments, and that the statute
authorizing removal said " any person " (Dig. of 1844,
sec. 8) and contemplated the removal of only one person.

THE COURT, in over-ruling the motion, said, The first
act in relation to removal was enacted October, 1727. It

authorized a Justice of the Peace or Warden, upon information given him, by his warrant to the constable or town sergeant, forthwith to convey any foreigner or stranger out of the town who comes there to reside, upon neglect to give the Town Council information of his intent to settle therein.

In November, 1737, it was further enacted, that " Whereas there is no provision made in said act to enable said Town Councils to carry any person out of town if rejected ; It is enacted, that the Town Council may, when any persons are before them and rejected to be inhabitants, by warrant directed to the Town Sergeant carry such person or persons out of said town and deliver them to some authority obliged by law to receive them, and that the said Town Councils and all officers under them in the manner of carrying said persons shall be governed according to the laws of England and the Colony, in such case made and provided."

In October, 1748, the provisions for removal are put in the same form as now, using the term *person or persons.*

In 1798, the terms used are if *any person* (in the singular) " shall reside" " not being settled."

Now, the law of England as it then existed, not altered by any provision of ours, permitted an order to be made for the removal of any number from one parish to another parish.

In Burrows Settlement Cases there are numerous instances of orders of this kind, where the orders were quashed as to some of the persons ordered to be removed and confirmed as to others.

In the case of *Bowling* v. *Bradford* (Burrows No. 63) the order was to remove a man, his wife and children,

and was confirmed as to the man and wife and quashed as to the children.

In the case of the *King* v. *Inhabitants of Nomanton* (Burrows No. 73) there was an order to remove a woman and her children, which was quashed as to the children and confirmed as to the woman.

So in Burrows No. 70, an order to remove a man, his wife and daughters, was confirmed as to the man and his wife and quashed as to the daughters.

It appeared in proof that Mary Latham was born in 1805, and Deborah Latham in 1809. Elisha Latham, their father, was born in Smithfield and resided there until 1808, when he removed to Glocester, where he remained until 1816 and acquired a settlement. In 1816 he returned to Smithfield with his two children where, the plaintiff offered proof to show, he acquired a legal settlement after the oldest child had attained the age of twenty-one and while the youngest was still a minor. The defendant offered evidence to show that the settlement was not acquired until after both had attained the age of twenty-one. It appeared that both children were idiots and had been such from their earliest infancy.

The statute provides, " Legitimate children shall follow and have the settlement of their father until they arrive to the age of twenty-one years, if the father shall before that time have any settlement in this State or in any other of the United States, and shall retain such settlement until they gain a settlement of their own.

It was contended for the plaintiffs, that upon the evidence, the youngest daughter was settled in Smithfield, because at the time she arrived at twenty-one years of

age, her father was legally settled there. It was farther contended, that the language of the statute only applied to *compotes mentis.* By the common law such persons might have gained a settlement for themselves before that age (5 Jacob's Law Dic. 215.) But idiots always followed the settlement of their father until they acquired one for themselves by some act not requiring any volition of their own. *King* v. *Mechcowan* (2 Barn. & Ald. 861.) In the States where the statute follows the common law, the same doctrine prevails. *East Hartford* v. *Middletown* (1 Conn. 196.) *Alexandria* v. *Bethlehem* (1 Harrison 119.) The statute of this State has changed the common law only in regard to *compotes mentis,* who after the age of twenty-one cease to follow the settlement of the father. The doctrine is, that the son becomes emancipated at the age of twenty-one and continues in his father's settlement until he gains one of his own, although his father may afterwards change his settlement. But idiots are never emancipated and can never acquire a settlement of their own and therefore continue to follow that of their father. This principle is recognized in the Courts of Massachusetts, in which the statute by the construction of the Courts is precisely like ours. (Rev. Stat. of Mass. p. 367.) *Springfield* v. *Wilbraham* (4 Mass. 493.) *Upton* v. *Northbridge* (15 Mass. 237,) and also in New Hampshire and Maine, *Oxford* v. *Rumley* (3 New Hamp. 381.) *Wiscassett* v. *Weldborough* (3 Maine 338.)

For the defendant it was contended. By the common law, by the law of New Jersey and, by construction, in Massachusetts, the child derives its settlement from the father until it is emancipated. In England emancipation depends upon the separation from the parent. In Massachusetts he is emancipated at the age of twenty-one, ex-

cept in case of idiocy and great mental or physical imbecility. The statutes do not in these States fix any period when the child shall cease to follow the settlement of the father. *Alexandria* v. *Bethlehem* (1 Harrison 119.) *East Hartford* v. *Middletown* (1 Conn. 196.) But in Rhode Island the idea of emancipation is not recognized. The settlement of the father when the child reaches the age of twenty-one determines the settlement of the child, until the child gains another. The counsel also cited, to show the strict construction which the Courts apply to the words of statutes. *Boylston* v. *Princeton* (13 Mass. 381.) *Mils* v. *Kilmarnock* (2 Fairfield 457.) *Randolph* v. *Braintree* (10 Verm. 436.)

The Court instructed the jury that idocy formed no exception to the rule prescribed by the statute, but that whether idiot or *compos mentis*, the child retained the settlement had by the father when he arrived at the age of twenty-one years, until he gained a new settlement of his own.

The jury found that Mary Latham was settled in Glocester and Deborah in Smithfield.

*Carpenter and Brown,* for plaintiff.

*Ames and Steere,* for the defendant.